**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

RICKY THOMAS, JR.,

    Plaintiff,

vs.

ANDREW M. SAUL, Commissioner of Social Security,[1]

    Defendant.

No. C18-2038-LTS

**MEMORANDUM
OPINION AND ORDER**

_____

Plaintiff Ricky Thomas, Jr., seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Thomas argues that (1) the ALJ's step five determination is not supported by substantial evidence, (2) the ALJ did not provide good reasons for rejecting the opinions of mental health treatment providers and consultative examiners and (3) the case should be remanded because the ALJ's appointment was unconstitutional. For the reasons discussed herein, the Commissioner's decision will be reversed and this case will be remanded for further proceedings.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Thomas was born on March 29, 1977, and was 35 years old on the amended alleged disability onset date. He has a high school education and previously worked as a customer service representative, furniture mover and in security. Thomas' impairments

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), he has been substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

include disorder of the spine, obesity, degenerative joint disease of the right ankle and "Achilles tenodinitis [sic], anxiety, PTSD, depressive disorder NOS, diabetes, peripheral neuropathy [and] hypertension." Doc. No. 11 at 2.

Thomas filed his application for DIB on September 29, 2014, and for SSI on December 8, 2016, alleging an onset date of February 15, 2013, which he later amended to September 23, 2014. After his claim was denied initially and on reconsideration, Administrative Law Judge (ALJ) Raymond L. Souza conducted a hearing on March 7, 2017. After Thomas was sent to physical and psychiatric consultative examinations, the ALJ conducted a second hearing on August 11, 2017. During the second hearing, Thomas testified that nothing had changed with his physical or mental health condition. AR 31. The ALJ denied Thomas' claim on September 8, 2017. Thomas submitted a timely request for review by the Appeals Council, which was denied on April 17, 2018. Thomas then filed a complaint (Doc. No. 4) in this court, seeking review of the Commissioner's decision. The issues are fully briefed and ready for decision.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), *accord* 1382c(a)(3)(A); 20 C.F.R. § 404.1505. A claimant has a disability when, due to his physical or mental impairments, the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices or other

factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 404.1566(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity (SGA), then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. § 404.1572(a).

Second, if the claimant is not engaged in SGA, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a).

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 404.1521(b)(1)(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at Step Two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of her past relevant work. If the claimant cannot do her past relevant work, then she is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). Past relevant work is any work the claimant has done in the 15 years prior to their application, that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id*. § 404.1560(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); s*ee* 20 C.F.R. § 404.1545(a)(1). The claimant is responsible for providing the evidence the Commissioner will use to determine claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id*. If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at

Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id*. § 404.145(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use is a contributing factor material to the determination of disability. 42 U.S.C. §§ 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. § 404.1535.

### III.   THE ALJ'S FINDINGS

The ALJ found that Thomas last met the insured status requirements of the Social Security Act on December 31, 2014 and had not engaged in substantial gainful activity since September 23, 2014. AR 12. He found that Thomas suffered from the following severe impairments: "disorder of the spine, obesity, degenerative joint disease of the right ankle and Achilles tenodinitis [sic], anxiety, PTSD, depressive disorder NOS, diabetes, peripheral neuropathy [and] hypertension" but found they did not meet or medically equal the severity of listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. AR 12–13.

Therefore, at step four the ALJ found Thomas had a residual functional capacity (RFC) to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he must have the option to set or stand alternatively at will provided that he would not be off task more than 8% of the work period. He can never climb ladders, ropes or scaffolds and occasionally climb stairs/ramps, stoop, crouch, kneel, and crawl. He can frequently handle (gross manipulation) and finger (fine manipulation) bilaterally. He should have no exposure to extreme cold, excessive vibration, hazardous machinery, or unprotected heights. He is able to remember, understand and carry out simple and routine instructions and tasks consistent with SVP levels 1 and 2 type jobs. He should have no strict production quotas with an emphasis on per shift rather than per hour basis.

AR 15. The ALJ found based on that RFC that Thomas could not perform any past relevant work. AR 18. However, he found that based on Thomas' age, education, work experience and RFC there are jobs that exist in significant numbers in the national economy that Thomas can perform. AR 19. The ALJ relied on the testimony of the vocational expert (VE) to support that finding. AR 19–20. The ALJ concluded that Thomas was not under a disability, as defined in the Act at any time from the amended alleged onset date through the date of his decision. AR 20.

## IV. *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits

without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)). Nor does the court "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

### A. *Vocational Expert testimony*

An ALJ has the burden of proving there are jobs in the national economy the claimant can perform. *See Gieseke v. Colvin*, 770 F.3d 1186, 1189 (8th Cir. 2014); *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). "In making this determination the ALJ may rely on testimony by a VE that is 'based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies.'" *Gieseke*, 770 F.3d at 1189 (quoting *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007)).

Thomas contends that the ALJ's step five denial of benefits is not supported by substantial evidence because the hypothetical given to the VE was flawed.[2] Doc. No. 12 at 3. Thomas argues there is a conflict between the VE's testimony that a person who is not off task more than 10% of the "work period" could maintain employment and the VE's testimony that a person who took additional breaks every hour for five minutes could not maintain competitive employment. *Id.*

The Commissioner argues that because the VE responded to a hypothetical that was almost identical (and even more restrictive than) the ultimate RFC, the VE's response provides substantial evidence at step five. Doc. No. 13 at 17. The Commissioner argues that the "time off task restriction" and the "break restriction" are two separate issues and do not present a conflict that must be resolved. *Id.* at 20–21.

At the second ALJ hearing the ALJ posed, in relevant part[3] the following hypothetical:

---

[2] Thomas also alleges, in a footnote, that there are "issues with two of the three jobs" the VE relied on. Doc. No. 12 at 4 n.4. But he states that his brief "focuses on the clearer error the ALJ made" regarding the "off task" limitations. *Id.* I find that Thomas' arguments as to the job listings are undeveloped and, therefore, need not be addressed. *See Aulston v. Astrue*, 277 F. App'x 663, 644 (8th Cir. 2008) (declining to consider a claimant's undeveloped argument).

[3] Other restrictions in the hypothetical included:

> And what I'd like to do now is assume a person of the claimant's age, education and work experience who is able to do sedentary work with a set/stand option on, the person could sit or standing alternatively at will provided the person is not off task by more than 10% of the work period . . . . Could that person perform their past work?
>
> A. No.
>
> Q. Would there be any other work within the national economy for such an individual?

AR 37. The VE responded that the person could perform the jobs of document preparer, order clerk and final assembler. *Id.* This exchange followed:

> Q. Same individual, same limitation except that the person would be off task by 15% of the day in addition to regularly scheduled breaks. Would that preclude work at all exertional levels?
>
> A. Yes

AR 37–38.

> Thomas' counsel then presented the following hypothetical:
>
> And if in addition to normal work breaks the person needed to take an additional break every hour of five minutes and they were not on task during that time is competitive employment still possible in [the jobs of document preparer, order clerk and final assembler]?

---

"no climbing of ladders, ropes, or scaffolds, occasional climbing of ramps and stairs, occasional stooping, crouching, kneeling, and crawling, no exposure to extreme cold, no exposure to excessive vibration, with no use of hazardous machinery, that's unshielded moving machinery, as well as all exposure to unprotected heights, able to remember, understand, and carry out simple and routine instructions and tasks consistent with SVP levels 1 and 2 type jobs, with no strict production quota with the emphasis being on a per shift rather than a per hour basis."

AR 37.

9

AR 38. The VE answered that the person would not be able to maintain competitive employment. Ultimately, the ALJ found that Thomas would not be off task more than 8% of the work period.

The Commissioner argues that "10 percent time off task" is related to sitting or standing at will and not related to scheduled work breaks. Doc. No. 13 at 19. That is not entirely clear, especially considering the ALJ's second hypothetical that specifically tied the 15% time off task to regularly scheduled breaks. It is also not clear if "work period" refers to a full 8-hour work day or the period of time between breaks.

Thomas concedes that, generally, because the RFC limitation is less limiting than the hypothetical questions there is no issue unless the VE's testimony contradicted itself. Doc. No. 12 at 4. If the "10% off task" restriction equates to the "5-minute break every hour restriction" then the VE's testimony conflicts with the ALJ's hypothetical and is unreliable. A person who is off task for 10% of an hour is off task for 6 minutes of that hour, which is more time off-task than the "5-minute break" hypothetical proposed by Thomas' counsel, which the VE said would preclude competitive work.

The ALJ's second hypothetical referred to "15% of the day," rather than the hour. A person off task 10% of an 8-hour work day is off-task for 48 minutes. A break of five minutes every hour in an 8-hour work day would equal 40 minutes a day. A person off task 8% of the work day is off task for approximately 38 minutes of the day.

While it is possible that the "10% off-task" is tied to sitting and standing, but not to breaks, it is not explicit and neither the ALJ nor the VE clarified the issue. Nor did they distinguish the work period to which the "off-task" assessment referred. In either situation, it appears the VE contradicted himself by saying there was competitive work for someone who was off task 10% of the time but there was not competitive work for someone who took additional 5-minute breaks every hour. I find that the VE's testimony

is contradictory and, without explanation, cannot support the ALJ's step-five determination that there are jobs in the national economy that Thomas could perform.[4]

## B. *Medical opinions*

Medical opinions can come from a treating source, an examining source or a non-treating, non-examining source (typically a state agency medical consultant who issues an opinion based on a review of medical records). Medical opinions from treating physicians are usually entitled to substantial weight. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). Nonetheless, if the ALJ finds that a treating physician's medical opinion as to the nature and severity of the claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] record, [the ALJ] will give it controlling weight." 20 C.F.R. § 416.927(c)(2). "When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Brown v. Astrue*, 611 F.3d 941, 951–52 (8th Cir. 2010). However, a treating physician's conclusion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

"The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003). This does not mean, however, that such opinions are to be disregarded. Indeed, "an ALJ may

---

[4] I acknowledge that the RFC includes the least restrictive time off-task amount. But the VE testified that the next closest time off-task would preclude employment and, without clarification, there is confusion on whether the 8% off-task restriction would allow the claimant to engage in the jobs listed.

credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) (internal quotations and citations omitted). Unless a treating source's opinion is given controlling weight, the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." 20 C.F.R. § 44.1527(e)(2)(ii). In the middle of the spectrum are opinions from consultative examiners who are not treating sources but who examined the claimant for purposes of forming a medical opinion. Normally, the opinion of a one-time consultative examiner will not constitute substantial evidence, especially when contradicted by a treating physician's opinion. *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000). Ultimately, it is the ALJ's duty to assess all medical opinions and determine the weight to be given these opinions. *See Finch*, 547 F.3d at 936 ("The ALJ is charged with the responsibility of resolving conflicts among medical opinions."); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("[i]t is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'") (citing *Bentley v. Shalala*, 52 F.3d 784, 785–87 (8th Cir. 1995)).

Thomas argues that the ALJ did not provide good reasons for rejecting the medical opinions in the record asserting that Thomas required a supervisor limitation. Doc. No. 12 at 6–7. The Commissioner argues that substantial evidence supports the RFC limitations and the ALJ properly weighed the opinions from non-treating medical sources. Doc. No. 13 at 8.

### 1. *Joint opinion of Vicki Boling, ARNP and Joyce Andresen, LISW*

Thomas argues that the ALJ rejected this opinion without identifying particular records with which their opinions were inconsistent. Doc. No. 12 at 7. The Commissioner contends that the evidence as a whole did not support Boling's and Andresen's joint opinion. Doc. No. 13 at 11. The Commissioner points out that Boling and Andresen are only "other sources" and cannot provide medical opinions entitled to

controlling weight. *Id.* at 12. The Commissioner argues that the ALJ did discuss inconsistent records. *Id.*

The ALJ gave this opinion little weight because it is not well-supported or consistent with the record. AR 18. He also gave it little weight because both Boling and Andresen are not considered acceptable medical sources, and the alleged limitations are "vaguely stated, rather than providing useful, function-by-function assessment of what the claimant can and cannot do." *Id.*

Inconsistency with the record is a good reason not to give controlling weight to medical opinions. *See Stormo v. Barnhart*, 377 F.3d 801, 805–06 (8th Cir. 2004) (opinions from treating sources may be "given less weight if they are inconsistent with the record as a whole"); *Kinzebach v. Berryhill*, No. 16-CV-2114-LRR, 2018 WL 1023600 at *4 (N.D. Iowa, Jan. 19, 2018). The question is whether the reasons are supported by substantial evidence.

Boling's and Andresen's joint opinion stated that they have been treating Thomas at least once a month since January 2012. AR 902. They had been treating him for depression and anxiety after two car accidents. *Id.* They noted that Thomas reported problems with concentration, memory, focus, handling stress, needing reassurance and guidance, isolation, and social settings because of a lack of confidence and financial issues. *Id.* However, the opinion itself does not provide any evaluations of Thomas' functional ability.

The ALJ discussed other medical evidence in the record pertaining to Thomas' mental impairments, even if he did not detail every inconsistency.[5] *See* AR 16–18. The mental medical source statement form from Andresen had an empty section for clinical findings. AR 666. It noted that Thomas did respond well to medication management

---

[5] The ALJ also discussed the extensive medical records pertaining to Thomas' physical impairments. AR 16. However, Thomas did not object to the ALJ's findings with respect to physical limitations.

and supportive therapy. *Id.* Thomas had "limited but satisfactory" ability to understand, remember and carry out simple instructions, make simple work-related decisions and ask simple questions or ask for help. AR 668. Thomas only had moderate difficulty in maintaining social functioning. AR 670. Throughout her treatment notes, Andresen stated that Thomas had appropriate insight, judgment, thought content, thought process and concentration with no significant changes noted during the course of treatment. AR 499, 502, 510, 515, 517, 537, 545–46, 555, 557, 563, 578, 907, 911, 916, 919, 927, 947, 975, 1255. It is true that Thomas reported "ups and downs" (AR 502, 528, 533, 908) but the social functioning limitations and mental status examinations did not significantly change.

Boling's treatment progress notes also indicate, inconsistent with the joint opinion, that Thomas had fair concentration and motivation, adequate memory, normal thought process and good judgment and insight. AR 531, 540, 548, 559, 574, 586, 968, 979. Other medical records indicate his memory was intact (AR 406, 450, 627, 633, 639, 646, 652) and his judgment and thought content was normal (AR 400, 406, 423, 443, 450, 463, 639, 646, 652, 889, 1028, 1068, 1122, 1148). Additional medical records show that his limitations in concentration are moderate, but all other limitations are mild and he is not significantly limited socially. AR 68. Thomas himself indicated that he "gets along okay with authority figures." *Id.*, AR 250, 259.

The ALJ's reason for not giving Boling's and Andresen's opinion significant weight is that it was inconsistent with the record and not well supported. I find this reason and the resulting RFC are supported by substantial evidence. The inconsistencies in the record show that Thomas only had mild/moderate to no limitations in social functioning, he got along with some supervisors and was able to interact with his providers in an appropriate manner. While Thomas may have had some "ups and downs" his mental status exams remained consistent throughout his treatments. The court may not reverse the ALJ's decision simply because it may have reached a different conclusion or because substantial evidence supports a contrary conclusion. *Fentress v.*

*Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017). I find there is substantial evidence in the record to support the reasons the ALJ gave for not attributing substantial weight to other examining medical source opinions.

### 2. *Dr. Christine Guevara, Ph.D.*

Thomas contends that the ALJ gave no reason for rejecting the supervisor limitation portion of Dr. Guevara's opinion, even though the ALJ gave great weight to the opinion. Doc. No. 12 at 7. The Commissioner argues that the checklist form indicating moderate impairment in an ability to interact appropriately with supervisors contradicts her own examination records where she stated Thomas had "mild to no impairment" in the same ability. Doc. No. 13 at 8. The Commissioner contends that it was proper to give great weight to the overall opinion, but not include the supervisor limitation because it was inconsistent with her own records, Thomas' daily activities and other evidence in the record. *Id.* at 9–10.

The ALJ gave this opinion significant weight "to the extent it is consistent with the RFC because they are well-supported and consistent with the record." AR 17. Dr. Guevara conducted a one-time examination for a disability determination. AR 1127. Thomas presented with a depressed and anxious mood, but his social judgment was intact, his attention moderately compromised, and his memory mildly affected. AR 1129. He had no impairments in his ability to understand instructions, procedures or locations. AR 1131. More significantly, Dr. Guevara noted "mild to no impairment" in his ability to interact appropriately with supervisors, co-workers or the public. AR 1131. A checkmark box on the same form indicated a "moderate limitation" in his ability to appropriately interact with supervisors, no limitation in his ability to appropriately interact with the public and no limitation in responding to work situations or changes. AR 1134.

Dr. Guevara detailed an incident that she opined was the source of Thomas' anxiety. She indicated that Thomas suffered from a hostile work environment as a result

of harassment from a supervisor while Thomas worked at a school. AR 1127. But her statements regarding Thomas' job after the school, at a Rent-A-Center, do not indicate any issues with supervisors. AR 1130. The rest of her opinion indicates that he has no limitation in interacting appropriately with public and mild to no impairment in interacting with supervisors, despite the one incident in his past, which is consistent with the rest of the medical evidence as detailed above. Therefore, along with the medical records previously discussed, I find substantial evidence supports the ALJ's decision not to include a social functioning limitation with respect to supervisors in Thomas's RFC.

### C. *Appointments Clause challenge*

Thomas argues that the case should be remanded because the ALJ was an inferior officer who was not appointed in compliance with the Appointments Clause. Doc. No. 12 at 8, 17–21. Thomas did not raise this argument in front of the ALJ, but argues that it is timely because there is no ALJ issue exhaustion and even if there was, the constitutional claims exception and the futility exception apply. *Id.* at 10–15. In the alternative, Thomas argues that I should exercise discretionary review authority for an untimely Appointments Clause challenge. *Id.* at 15. The Commissioner argues that at no point in the administrative process did Thomas raise this claim and this court has repeatedly rejected similar Appointments Clause challenges. Doc. No. 13 at 24.

Thomas does not argue that this case presents any factual or procedural differences from other cases that have previously been addressed by this court where the court has ruled in favor of the Commissioner on similar arguments. *See White v. Comm'r of Soc. Sec.*, No. C18-2005-LTS, 2019 WL 1239852, at *4 (N.D. Iowa Mar. 19, 2019), *Stearns v. Berryhill*, No. 17-CV-20131-LTS, 2018 WL 4380984, at *6 (N.D. Iowa Sept. 14, 2018); *Davis v. Comm'r of Soc. Sec.*, No. 17-CV-80-LRR, 2018 WL 4300505, at *8–9 (N.D. Iowa Sept. 10, 2018). *Stearns*, in particular, addresses the same arguments that Thomas raises in his brief. *See Stearns*, 2018 WL 4380984 at *4-*5 (addressing the lack of issue exhaustion in social security appeals and the futility exception). I find nothing

in Thomas' arguments that compels me to amend my analysis of this issue in prior cases. Because Thomas did not raise an Appointments Clause issue before or during the ALJ's hearing or before the ALJ's decision became final, he has forfeited the issue for consideration on judicial review. However, because I find the decision should be remanded for reconsideration of the VE's testimony, Thomas will not be precluded from raising an Appointments Clause challenge on remand. *See Dyslin v. Comm'r of Soc. Sec.*, No. 18-CV-0014-LTS, 2019 WL 2219004 at *14 (N.D. Iowa Feb. 22, 2019); *Anderson v. Comm'r of Soc. Sec.*, No. 18-cv-24-LRR, 2019 WL 1212127, at *5 (N.D. Iowa Feb. 19, 2019).

## VI. CONCLUSION

For the reasons set forth herein:

1. The Commissioner's determination that Thomas was not disabled is **reversed** and this matter is **remanded** to the Commissioner for further proceedings consistent with this opinion.

2. Judgment shall enter against the Commissioner and in favor of Thomas.

3. If Thomas wishes to request an award of attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, an application may be filed up until 30 days after the judgment becomes "not appealable," i.e. 30 days after the 60-day time for appeal has ended. *See Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); 28 U.S.C. §§ 2412(d)(1)(B), (d)(2)(G).

**IT IS SO ORDERED.**

**DATED** this 6th day of September, 2019.

_____
Leonard T. Strand, Chief Judge